**Joseph K. GLAZNER, Appellant,**

v.

**R.E. HAASE and PRH Investments, Inc., Appellees.**

No. 06–99–00069–CV.

Court of Appeals of Texas, Texarkana.

Argued April 20, 2000.

Decided Aug. 4, 2000.

John R. Mercy, Mercy, Carter & Elliott, LLP, Texarkana, Kenneth L. Ross, Ross, Hudgens & Associates, Longview, for appellant.

Bradley R. Echols, Gary Shaver, Boon, Shaver, Echols & Coleman, PLLC, Longview, for appellee.

Before CORNELIUS, C.J., GRANT, and BASS, JJ., BILL BASS, Justice, Sitting by Assignment.

## OPINION

BILL BASS, Justice (Assigned)

Joseph K. Glazner ("Glazner") brought suit against R.E. Haase ("Haase") and PRH Investments, Inc. ("PRH") for breach of contract, unjust enrichment, fraud and fraudulent inducement. Haase moved for summary judgment which the trial court granted. We reverse the summary judgment rendered in the causes for fraud and fraudulent inducement and sever and remand these causes. Otherwise, we affirm the summary judgment.

Haase owns the Whataburger franchise for the Longview area. Glazner came to work for Haase in July of 1992 hoping to learn the fast food business, and with the ultimate goal of owning and operating a franchise of his own. Glazner contends that in July of 1994 he and Haase reached

an agreement wherein Haase agreed to allow him to open a Whataburger within Haase's franchise area in south Longview. Glazner claims that Haase also agreed that he would help Glazner obtain his own franchise from Whataburger for the south Longview location by promising Whataburger that he would guarantee the success of Glazner's franchise as he had done for another aspiring franchisee, Bill Hablinski in Jacksonville. Haase also promised that he would sell Glazner his Longview units when he, Haase, decided to retire, and Glazner agreed that he would sell the proposed south Longview unit to Haase in the event he should decide to sell "for some reason." Glazner insists the contract was completely set forth in three letters to Whataburger either signed by Haase or incorporated by reference in a letter signed by him. Glazner contends that further consideration for the agreement was shown in a cash flow statement that assumed the payment by Glazner to Haase of two percent of net projected sales, the same consideration apparently paid by Hablinski to Haase for the Jacksonville franchise.

Whataburger never granted Glazner a franchise, and, in May 1995, Glazner left Haase's employ. The evidence shows that during the time Glazner worked for Haase, Whataburger granted no new franchises. However, sometime after May of 1996, Haase was granted a franchise for a south Longview location which opened for business in June of 1997.

■ In order to prevail, the summary judgment movant must establish that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). Summary judgment for a defendant is proper only if the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and proves as a matter of law each element of an affirmative defense. *Id.; Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223–24 (Tex.1999).

Haase moved for summary judgment on the following grounds: 1) the alleged contract is unenforceable pursuant to the Statute of Frauds,[1] 2) the fraud claims are barred by the Statute of Frauds, 3) Glazner is unable to offer summary judgment evidence that there was a valid contract, 4) there is no cause of action for unjust enrichment, and 5) PRH Investments, Inc. is not a proper party to this suit, because Glazner cannot prove any basis for piercing the corporate veil. Since the trial court did not state the ground or grounds for granting the motion, Glazner, the nonmovant, must show why each ground asserted in the motion is insufficient to support the judgment. *Rogers v. Ricane Enterps., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

■ There is no dispute that the alleged contract is within that class of agreements that must conform to the requirements of Section 26.01 of the Texas Business and Commerce Code, commonly called the

---

1. Glazner also alleges that this is the only ground for summary judgment that was properly pled by Haase, and that as a result, his failure to plead the other grounds should be fatal to the court's granting judgment on those bases. *See Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). While this is an accurate statement of law, it is not applicable in this case, because when Glazner raised these objections, Haase did file a Second Amended Original Answer, which clearly pleaded every ground that was brought in the Motion for Summary Judgment. Since this amended answer was on file more than seven days prior to the time of the hearing, summary judgment on any of the asserted grounds is proper. *See Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 825–26 (Tex.App.—Dallas 1992, writ denied); *see also* Tex.R.Civ.P. 166a(c).

Statute of Frauds. It provides that both a promise of one person to answer for the debt, default or miscarriage of another person and an agreement not capable of being performed within one year from the date of the making of the agreement must be in writing and signed by the person to be charged with the promise or agreement. TEX.BUS. & COM.CODE ANN. § 26.01(b)(2), (b)(6) (Vernon 1987). The statute requires that the agreement be complete within itself in every material detail, and that it must contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resorting to oral testimony. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). However, there is no requirement that the written agreement be contained in only one document. *See Adams v. Abbott*, 151 Tex. 601, 254 S.W.2d 78, 80 (1952).

██ Glazner insists there are four writings that serve to satisfy the statute's requirements. Three are letters sent to Whataburger, Inc. seeking a franchise for Glazner. The three letters were either signed by Haase or expressly referred to in the letters signed by him. The fourth writing is a cash flow statement that, according to Glazner, reflects Haase's agreement to accept two percent of the net sales at the south Longview location in consideration of his relinquishing the right to the franchise. Glazner maintains that, when read together, the following sections from the three letters set out the agreement:

Roy [Haase] and I have agreed in principle to an arrangement that will allow me to build a new restaurant in south Longview along the I–20 corridor.... Roy has no intentions to expand in Longview and therefore has offered the south Longview location to me. In return [for Glazner receiving the south Longview location from Haase] we have a tentative agreement that essentially

states that when Roy does decide to sell Longview and retire that he will sell to me.... I, in return, will sell to him in the unlikely event that I should sell for some reason.... Roy will, if required by corporate, guarantee the unit's success—very similar to how Haase/Thomas guaranteed Billie Hablinski when they sold the Jacksonville market to him ... and ... given the arrangement that Mr. Haase and I have reached.

[Glazner] and I have reached a tentative agreement regarding building a Whataburger restaurant in south Longivew.

Glazner argues that the consideration for the agreement consists of 1) his promise to sell his units to Haase "in the unlikely event that I should sell for some reason," and 2) the consideration shown in the cash flow statement assuming the payment by Glazner to Haase of two percent of the net sales of the south Longview store.

The documents relied upon by Glazner cannot satisfy the Statute of Frauds for several reasons.

██ Although an unsigned paper may be incorporated by reference in a signed agreement, the express language in the signed document must expressly refer to the other writing. *Owen v. Hendricks*, 433 S.W.2d 164, 166–67 (Tex.1968). The cash flow statement is not plainly referred to in any signed document; therefore it may not be considered and cannot serve to satisfy the Statute of Frauds. *Id.*

██ The three letters relied upon do not answer the requirements of the Statute of Frauds, because they do not contain all of the essential elements of a binding agreement. First, the agreement is not supported by consideration. A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408–09 (Tex.1997). The cash flow state-

ment cannot be considered. The other consideration urged by Glazner, his promise to sell his prospective franchise to Haase "in the unlikely event [he] decides to sell for some reason," is too indefinite to be enforceable. A legally binding promise must be sufficiently definite in its terms to enable the court to understand what the promisor undertook. *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex.1966). "A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered or the property to be transferred." *University Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ), *citing Terrell v. Nelson Puett Mortgage Co.*, 511 S.W.2d 366, 369 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.). Glazner's and Haase's mutual promises to buy or sell do not mention a price to be paid or a method for calculating a price. The agreement also fails to specify a time for performance, the terms of the sale or the number of locations included. The agreement does not define how Haase will guarantee the success of the prospective franchise, nor does it define "success." A contract, whether written or oral, must define its essential terms with sufficient precision to enable the court to determine the obligations of the parties. *Estate of Eberling v. Fair*, 546 S.W.2d 329, 333 (Tex.Civ. App.—Dallas 1976, writ ref'd n.r.e.).

Moreover, the agreement does not satisfy the Statute of Frauds, because it is not a final agreement. This is apparent not only from the fatal imprecision afflicting almost all its terms, but from the tenor of the writings themselves. The letters refer to it as only a "tentative agreement" that "essentially states" the terms of the agreement. Both Haase and Glazner refer to the agreement between them as "an agreement in principle." The letters show ongoing negotiations, not a binding agree-

ment. *See Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery and Tea Room*, 8 S.W.3d 18, 21 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). The alleged agreement is not enforceable under the Statute of Frauds, and this ground is sufficient to support the trial court's summary judgment against Glazner's cause for breach of contract.

▮▮▮▮ Glazner also brought suit for fraud and fraudulent inducement. Haase contends that these claims are barred by the Statute of Frauds, because by these claims Glazner seeks to recover the benefit of the bargain or economic loss he might have obtained if the contract had been enforceable. Citing *Collins v. Allied Pharmacy Management*, 871 S.W.2d 929, 936 (Tex.App.—Houston [14th Dist.] 1994, no writ). Haase argues that when the injury alleged is the same economic loss that is the subject of the contract itself, the action sounds in contract. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). Therefore, when a plaintiff asserts a claim of fraud, attempting to rely upon an alleged fraudulent promise to enforce his principal contract, Haase argues the Statute of Frauds is a defense to the claim. Citing *Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 129 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). However, the Texas Supreme Court has recently made it clear that the plaintiff need not suffer an injury distinct from the economic loss under the breach of contract claim in order to recover damages for fraud or fraudulent inducement. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). The Court stated:

> [T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an eco-

nomic loss related to the subject matter of the contract. Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with ... well-established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement.

*Id.* at 47.

Glazner's claims of fraud and fraudulent inducement allege the breach of legal duties completely independent of those under the alleged agreement.

[W]hen a party fraudulently procures a contract by making a promise without any intent of keeping the promise in order to induce another into executing the contract, a tort cause of action for that fraud exists.

*Id.* at 52.

The trial court erred in granting summary judgment in these two causes.

Haase moved for summary judgment on Glazner's claim that Haase was unjustly enriched. Haase specially excepted to Glazner's pleading regarding unjust enrichment which stated only that "Haase was unjustly enriched to the detriment of plaintiff."

In its order granting special exceptions, the trial court ordered Glazner to replead and to specifically state the factual and legal bases for his claim of "unjust enrichment." Glazner did not replead, and Haase moved for summary judgment on the ground that Glazner had failed to state a cause of action. Once special exceptions have been sustained and the plaintiff has been given an opportunity to replead, the defendant may move for summary judgment on the ground that the plaintiff has failed to state a cause of action. *Friesenhahn v. Ryan,* 960 S.W.2d 656, 658 (Tex.1998). Summary judgment on the unjust enrichment claim was proper.

In his suit Glazner asked the trial court to disregard the corporate entity of PRH. As Haase points out, an allegation that one entity is the alter ego of another is not a separate cause of action. Instead, it is a theory of law that, when proven, entitles a plaintiff to judgment that the alter ego party is liable for damages assessed against the party sued in the underlying cause. *Gallagher v. Bintliff,* 740 S.W.2d 118 (Tex.App.—Austin 1987, writ denied).

We reverse the summary judgment on the fraud and fraudulent inducement causes of action, and remand them to the trial court. Otherwise, the summary judgment is affirmed.

ROSS, J., not participating.