FIDUCIARY FINANCIAL SERVICES
OF the SOUTHWEST, INC.,
Appellant/Cross–Appellee

v.

CORILANT FINANCIAL, L.P. and Cor-
ilant Financial Management, LLC,
Appellees/Cross–Appellants.

No. 05–10–00471–CV.

Court of Appeals of Texas,
Dallas.

July 30, 2012.

Rehearing Overruled Sept. 6, 2012.

Scott Masur McElhaney, John A. Koepke, Jackson Walker, L.L.P., Dallas, TX, for Appellant/Cross–Appellee.

Dan S. Boyd, The Boyd Law Firm, P.C., Dallas, TX, for Appellees/Cross–Appellants.

Before Justices MOSELEY, FITZGERALD, and MARTIN RICHTER.

## OPINION

Opinion By Justice MARTIN RICHTER.

Corilant Financial, L.P. and Corilant Financial Management, LLC (together "Corilant") sued Fiduciary Financial Services of the Southwest, Inc. ("FFSS") for breach of contract after FFSS refused to sell its

outstanding stock to Corilant. Following a jury trial, the trial court awarded Corilant damages of $1,825,000 plus interest and attorneys' fees. For the following reasons, we reverse the judgment of the trial court and render judgment that Corilant take nothing.

*Background*

This case involves a letter of intent between Corilant Financial, L.P. and Corilant Financial Management, LLC, a California-based entity created to acquire registered investment advisory firms ("RIAs") and Fiduciary Financial Services of the Southwest, Inc., a Dallas-based RIA, that provides investment management services.

In April 2006, Corilant approached Paul Welch, Chairman of the Board & Chief Investment Officer with FFSS, concerning a possible acquisition of FFSS. After discussions, the parties executed a "Summary of Terms & Conditions of Corilant's Proposed Offer to merge with Fiduciary Financial Service of the Southwest, Inc." This letter specifically stated, "These terms are not an offer, a commitment, or a binding contract or enforceable agreement . . . ." As verbal negotiations progressed, a "Letter of Intent" ("LOI") was executed on March 3, 2007 which is the subject of this suit. The LOI has two provisions that discuss the "drafting of definitive agreements." The first provision provides "Corilant will pay for legal costs associated with drafting the definitive agreements." The second provision states "Definitive Agreements memorializing these terms and conditions will be signed as soon as practicable." The LOI also states, "THIS LETTER OF INTENT IS A LEGALLY BINDING AND ENFORCEABLE AGREEMENT."

The LOI provides for earn-out payments for the five consecutive years following closing where Corilant will make payments "equal to gross revenues less 19.1% of gross revenues less expenses borne by FFSS including salaries." In May 2007, Corilant representatives spoke with FFSS representatives regarding concerns about how payments to Corilant would be structured during the earn-out period. In July 2007, Corilant sent FFSS drafts of three definitive agreements: a thirty-three page stock purchase agreement, a seven page proxy and voting rights agreement, and an eleven page employment agreement between Corilant and Paul Welch. FFSS refused to sign the agreements and notified Corilant that it would not pursue further discussions with Corilant. As a result, on July 20, 2007, Corilant filed a breach of contract suit against FFSS and ten of the FFSS employee/stockholders. After summary judgments and an agreed order to nonsuit some of the individual defendants, the court conducted a jury trial on the breach of contract claim. The trial ended with a hung jury. The case was subsequently re-tried. At the conclusion of the second trial, the jury found in favor of Corilant on the breach of contract claim and awarded damages of $1,825,000 plus prejudgment interest and attorneys' fees. Both parties now appeal the trial court judgment.

*FFSS' appeal*

FFSS raises eleven issues for this court's consideration. Because the first issue raised by FFSS is dispositive, we only address that issue in our opinion. TEX.R.APP. P. 47.1.

In its first issue, FFSS asserts the trial court erred by finding there was an enforceable contract between Corilant and FFSS for the sale of 98.5% of FFSS's outstanding stock.[1] FFSS claims the

---

1. The jury found in question # 1 that "Fiduciary Financial agreed to sell to Corilant, and

terms of the March 3, 2007 LOI were too indefinite to be enforced. Corilant responds the terms of the LOI were definite and the LOI is a binding contract.

■ In reviewing a no evidence, or legal sufficiency of the evidence point, we consider only the evidence and reasonable inferences that support the jury's findings; we disregard all evidence and inferences to the contrary. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). A no evidence point will be sustained when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). Whether a particular agreement is an enforceable contract is a question of law reviewed de novo. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex.2008); *Martin v. Clinical Pathology*, 343 S.W.3d 885, 891 (Tex.App.-Dallas 2011, pet. denied).

■ Whether an agreement fails for indefiniteness is a question of law to be determined by the court. *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex.App.-Dallas 2004, pet. denied); *see also T.O. Stanley*, 847 S.W.2d at 222. A contract is legally binding when its terms are sufficiently definite to enable a court to understand the parties' legal obligations. *Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000). Contract terms are reasonably certain when "they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 455 (Tex.App.-Fort Worth 2009, pet. denied) (citing Restatement (Second) of Contracts § 33(2) (1981)). "If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." Restatement (Second) of Contracts § 33, cmt. a (1981).

■ Parties may agree on some terms sufficient to create a contract, leaving other provisions for later negotiation. *See Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex.1972); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 133 (Tex.App.-Waco 2005, pet. denied). However, when essential terms are missing, we may find no more than an agreement to agree. *Ski River Dev.*, 167 S.W.3d at 134. "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth ISD*, 22 S.W.3d at 846 (quoting *Foster v. Wagner*, 343 S.W.2d 914, 920–21 (Tex.Civ.App.-El Paso 1961, writ ref'd n.r.e.)).

Here, FFSS claims the terms of the LOI are too indefinite to be enforced because the structure of the earn-out payments is too uncertain to be legally binding. The LOI states:

2) EARN–OUT PAYMENTS

Corresponding to FFSS revenue receipts, at the beginning of each calendar quarter for the consecutive five years following closing, Corilant will process earn-out payments equal to gross revenues less 19.1% of gross revenues less

Corilant agreed to buy from Fiduciary Financial, 98.5 percent of the shares of Fiduciary Financial."

expenses borne by FFSS including salaries....

The parties dispute the characterization of the 19.1% of gross revenues. FFSS contends the 19.1% was to be compensation for consulting and support services provided by Corilant and would therefore be deductible by FFSS as an expense and ultimately reduce FFSS's tax liability. This structure would minimize the tax liability of FFSS and result in maximizing the tax liability to Corilant. Conversely, Corilant claims they did not agree to provide any services to FFSS and contends the money flowing to Corilant was to be in the form of a dividend which would minimize the tax liability to Corilant and maximize the tax liability to FFSS. The evidence reflects FFSS believed the failure to characterize the 19.1% as a deductible management fee would cost them $800,000 over the five year earn-out period.

 FFSS contends the structure of the earn-out payments are essential terms missing from the LOI and thus, there is no enforceable contract. FFSS relies on *COC Services, Ltd.*, in which we decided a master franchise agreement lacked at least one essential term and thus was not enforceable as a matter of law. 150 S.W.3d at 665. In *COC Services, Ltd.*, we were also asked to decide, in the alternative, whether the terms of the letter of intent were unambiguous and conclusively negated any intent to be bound to the unexecuted master franchise agreement. *Id.* We further determined the evidence of the lack of agreement on key terms did not raise a fact issue whether there was mutual consent to be bound to the master franchise agreement. *Id.* at 665–66. Here, there is no evidence of a mutual understanding between FFSS and Corilant as to how the earn-out payments would be structured. On the other hand, there is a plethora of evidence as to the conflicting expectations with respect to this provision. FFSS believed the 19.1% would be treated as "management fee" expense and would minimize their tax liability. On the other hand, Corilant believed the 19.1% would be treated as a dividend and not deductible to FFSS as a management fee. The LOI is missing specific terms regarding the characterization of the 19.1% earn-out payments. We will not supply an essential term that the parties did not or could not agree upon. See *COC Servs.*, 150 S.W.3d at 665. Consequently, because the LOI lacks at least one essential term, it is not enforceable as a matter of law. *Id.*

 FFSS also contends the LOI provided for the ongoing involvement of Welch in the management of the company but failed to define the terms of his employment in a manner that can be enforced. Corilant responds that the LOI gave Welch a voting proxy for five years for all of the FFSS shared owned by Corilant, to be voted at his sole discretion. This "control paragraph" indicates that Welch would continue to be "the boss." The LOI states:

3) MANAGEMENT AGREEMENT

Mr. Welch will receive a management agreement outlining his ongoing role in the management of FFSS. The term of such agreement will extend for five years from Closing, and Mr. Welch's salary will be set at $250,000 per year.

Corilant sent an eleven page employment agreement to Welch as part of the definitive agreements. The eleven page agreement is very specific and list no fewer than sixteen "specific duties" expected of Welch whereas the LOI simply offers Welch an "ongoing role in the management of FFSS" at a stipulated salary. "Fatal indefiniteness in an agreement may concern the ... work to be done ... [or] ... the service to be rendered...." *COC Servs.*, 150 S.W.3d at 664 (citing *Glazner v.*

*Haase*, 61 S.W.3d 10, 15 (Tex.App.-Texarkana 2000) *rev'd in part on other grounds*, 62 S.W.3d 795 (Tex.2001)). Here, the LOI creates no specific duties to be performed by Mr. Welch in return for his $250,000 salary. This provision clearly contemplates a future agreement as it states he "*will* receive" an agreement. Further, requiring future negotiation suggest that the parties are only agreeing to make a future contract. An agreement leaving material terms to be agreed upon later is not definite and specific as to material and essential terms and is, therefore, unenforceable. *Ski River Dev.*, 167 S.W.3d at 134. The trial court has no authority to ask the jury to supply an essential term in the contract that the parties were unable to complete by mutual agreement. *Eberling's Estate v. Fair*, 546 S.W.2d 329, 334 (Tex.Civ.App.-Dallas 1976, writ ref'd n.r.e.).

In arguing the LOI was sufficiently definite to be enforced, Corilant relies on several cases based on the proposition that the primary consideration as to the enforceability of a contract is a factual determination of the intent of the parties. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (deciding whether ambiguity existed *within* an insurance policy exclusion); *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981) (construing ambiguity *within* an oil and gas lease); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980) (deciding whether ambiguity existed *within* a promissory note); *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex.1988) (deciding it was a question of fact whether terms agreed to by the parties were intended to be the final expressions of the contract or were only preliminary negotiations which the parties did not intend to have legal significance until execution of the contemplated legal documentation); *Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W.2d 554, 557 (Tex.1972)

(holding the jury charge should have included an issue as to whether the parties intended for there to be an employment contract under the basic terms set out *within* the purchase agreement); *Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759, 766 (Tex.App.-El Paso 2004, no pet.) (deciding whether a letter of intent was enforceable *after* a final purchase agreement had been signed). Of the cases referred to above, the only case that does not include an already enforceable contract is *Foreca*. The *Foreca* court was faced with deciding if a letter of intent was intended to be the final expressions of a contract. *See Foreca*, 758 S.W.2d at 746. The conflict between FFSS and Corilant is distinguishable. Here, Corilant does not claim the LOI was intended to be the final contract. The LOI expressly stated that definitive agreements would be drafted to memorialize the terms and conditions of the agreement between the parties. David Weiner, a Corilant officer, testified that "Corilant paid about $25,000 to generate" the definitive agreements. Further, the LOI was a total of two and one-half pages long whereas the final definitive stock purchase agreement was thirty-three pages long. Corilant clearly intended to significantly add to the final agreement.

We conclude the management agreement provision that leaves material matters open for future adjustment and negotiation fails for indefiniteness and is not enforceable as a matter of law. *See COC Servs.*, 150 S.W.3d at 665; *Fort Worth ISD*, 22 S.W.3d at 846. Therefore, we reverse the judgment of the trial court and render a judgment that Corilant take nothing on its breach of contract claim.

*Corilant's cross-appeal*

Corilant raises two issues for this court's consideration. In their first issue, Corilant complains the trial court erred by granting FFSS' summary judgment on its

breach of contract claim against defendants Welch, Wilson, McCoy, Boobar, Wright, Risner, and Kolkhorst ("Individual Cross–Appellees").

 A breach of contract claim requires a valid contract. *Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 766 (Tex.App.-Dallas 2011, no pet.) Because we have already determined the LOI lacks definitive terms and is not an enforceable contract, we need not consider Corilant's claim of breach. *See* Tex.R.App. P. 47.1. Corilant's first issue is overruled.

 In its second issue, Corilant contends the trial court erred by granting FFSS' summary judgment for the individual cross-appellees[2] on Corilant's common law fraud and statutory fraud claims. Corilant fails to provide any citation to the record showing summary judgment was granted on FFSS' common law fraud claim. *See* Tex.R.App. P. 38.1(i). However, the record reflects the trial court order granted summary judgment on the breach of contract and statutory fraud claims only. In its November 7, 2008 order, the trial court did not expressly rule on the common law fraud claims and "ORDRED [sic] that Defendants' Motion for Summary Judgment is otherwise DENIED." In addition, Corilant's brief fails to provide any citation to legal authority or otherwise address statutory fraud in the context of the summary judgment. *See* Tex.R.App. P. 38.1. Because Corilant failed to comply with Rule 38 of the Texas Rules of Appellate Procedure, Corilant has waived this issue on appeal. *See Devine v. Dallas County*, 130 S.W.3d 512, 513–14 (Tex.App.-Dallas 2004, no pet.) (holding failure to adequately brief waives issue on appeal.). Corilant's second issue is overruled.

**2.** Both parties filed a notice of appeal. Corilant's notice of appeal includes naming FFSS

*Conclusion*

We conclude the LOI is not an enforceable contract and overrule Corilant's two issues on cross-appeal. We reverse the judgment of the trial court awarding Corilant damages of $1,825.000, attorneys' fees, prejudgment and postjudgment interest, and render a judgment that Corilant take nothing on its breach of contract claim.

employee/stockholder defendants below.