# NO. 12-14-00280-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TONDA HARRIS HELMS,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *MARY FRANCES SWANSEN,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Tonda Harris Helms appeals from the judgment rendered after a trial before the court in Mary Frances Swansen's suit for breach of contract. Helms raises eight issues regarding the trial court's refusal to file additional findings of fact, the sufficiency of the evidence, and the awards of property and attorney's fees. We affirm in part and reverse and remand in part.

## BACKGROUND

In 2006, Swansen purchased a new "park model" mobile home and moved it onto a lot in Spring Lake Mobile Home Park, which is owned by Helms. Swansen moved to Kansas when she married in January 2008, leaving her mobile home in Helms's park. Swansen and Helms had an oral agreement that Helms would try to sell the mobile home. A disagreement as to the terms of that agreement and ownership of the mobile home led to litigation. Trial was before the court, which rendered judgment that the home belongs to Swansen.

## ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

In her first issue, Helms contends the trial court erred in failing to file additional findings of fact and conclusions of law when she requested them. She asserts that the court's initial findings do not include findings on what the terms of the contract were, what term was breached,

or what consideration was given by each party. Citing Rule of Civil Procedure 298, Helms argues that, because no findings or conclusions can be deemed or presumed by the court's failure to make additional findings or conclusions, the failure to find the missing essential elements of the claim for breach of contract results in a take nothing judgment.

**Applicable Law**

If timely requested, the trial court "shall file any additional or amended findings and conclusions that are appropriate." TEX. R. CIV. P. 298. Additional findings are not required if the original findings and conclusions properly and succinctly relate the ultimate findings of fact and law necessary to apprise the party of adequate information for the preparation of the party's appeal. *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 412 (Tex. App.−Fort Worth 2006, pet. denied). An ultimate fact is one that would have a direct effect on the judgment. *Id*. The controlling issue is whether the circumstances of the particular case require the party to guess at the reasons for the trial court's decision. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 382 (Tex. App.−Dallas 2013, no pet.). If the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal, there is no reversible error. *Flanary v. Mills*, 150 S.W.3d 785, 792 (Tex. App.−Austin 2004, pet. denied). Furthermore, if the requested findings will not result in a different judgment, they need not be made. *Id*.

**Analysis**

At Helms's request, the trial court filed findings of fact and conclusions of law. The pertinent findings are as follows:

> 3. While the park model home was still located at such park space at a time less than four years before the commencement of the instant lawsuit when the parties entered into a valid oral contractual agreement via the exchange of mutual promises under which Defendant agreed to find a buyer for the park model home.
>
> 5. Defendant represented to Plaintiff that to facilitate the sale of the park model home pursuant to their agreement, Plaintiff should sign the title to the said park model home in blank, and leave such signed title in the possession and care of the Defendant, which Plaintiff did with the understanding that the defendant would complete the application for title by adding the name of the buyer at the time when a buyer was located and payment therefor was received so as to transfer such title to such buyer.
>
> 6. In May 2010, after the conclusion of litigation in a justice court in Smith County, Texas which had resulted in a judgment unfavorable to Defendant, without the knowledge or consent of the Plaintiff, and without

payment of any consideration, the Defendant breached the oral contract to hold such title until a buyer could be found.

7. In May 2010 the Defendant, unilaterally and without the payment of any consideration for the sale of such park model home, wrongfully affixed her own name to the application for title as Buyer and then remitted the title to the said park model home to the State of Texas further breaching such oral contract and resulting in the issuance of a new certificate of title by the state of Texas reflecting Defendant as owner.

8. That Plaintiff gave defendant the proper notices and demands necessary under the statute to invoke the provisions of Tex Civ Prac and Rem Code Ann Sec. 38.001 *et seq.* regarding the recovery of reasonable attorney's fees in cases based upon the breach of an oral contract.

The pertinent conclusions of law are as follows:

1. The court finds that as a result of the existence of the oral contract between the parties and the subsequent breach of the contract by the Defendant, the Plaintiff sustained damages, and is therefore entitled to judgment relief . . . .

3. That Plaintiff is entitled under the law to judgment for the recovery of reasonable attorney's fees necessarily incurred on her behalf in this action as a result of Defendant's breach of the oral contract . . . .

Thereafter, Helms filed a request for additional findings of fact and conclusions of law on the following issues:

1. The consideration given by each party to the contract.
2. The material terms of the contract between the parties.
3. Which material term was breached, and by what specific act.
4. The date the claim for breach of contract was presented to the Defendant under Tex. Civ. Prac. & Rem. Code Ann. § 38.002.

Helms's requested findings and conclusions 1 and 2 are subsumed by the trial court's original finding of fact 3 and conclusion of law 1. Further, her requested finding and conclusion 3 is addressed in the trial court's original findings. Finding of fact number 6 specifically states that Helms breached the oral contract to hold the title until a buyer could be found. Finding of fact number 7 states that Helms further breached the agreement by affixing her name to the application for title as buyer. Further, Helms's requested additional finding and conclusion 4 is subsumed under original finding of fact 8 and conclusion of law 3. Moreover, under these circumstances, Helms was not required to guess at the reasons for the trial court's decision. *See In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 382. Finally, none of the requested additional

findings or conclusions would have resulted in a different judgment and therefore need not have been made. *See Flanary*, 150 S.W.3d at 792. We overrule Helms's first issue.

**SUFFICIENCY OF THE EVIDENCE**

In her second issue, Helms asserts that there is no evidence of consideration to support the oral contract. Specifically, she argues that while she agreed to find a buyer for Swansen, the agreement required no obligation on Swansen's part. In her third issue, Helms contends the contract is insufficiently definite to be enforceable. She asserts that the contract is so vague as to be meaningless and "there is absolutely no guidance as to what the obligations of the plaintiff would be." In her fourth issue, Helms contends there is no evidence that she breached the contract. She asserts it is difficult to determine what the contractual obligations of the parties were, but argues that putting her name on the title was not a breach of the parties' agreement. She further argues that the terms of a contract are determined at the time of the original formation and their original agreement did not include "anything about the title." Therefore, she argues, an additional requirement that Helms not affix her name to the title would require additional consideration.

**Standard of Review**

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). When challenged, a trial court's findings of fact are not conclusive, if as in the present case, there is a complete reporter's record. *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex. App.−Houston [1st Dist.] 2002, pet. denied). A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 860 (Tex. App.−Tyler 2013, no pet.). When reviewing a no evidence issue, we determine whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable finder of fact could and disregard contrary evidence unless a reasonable finder of fact could not. *Id*. If there is any evidence of probative force to support the finding,

4

i.e., more than a scintilla, we will overrule the issue. *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.−Houston [1st Dist.] 2008, pet. denied).

We are mindful that the trier of fact is the sole judge of the credibility of the witnesses and weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id*. at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id*. at 821.

## Applicable Law

The elements of a breach of contract claim include (1) the existence of a valid contract, (2) performance or tendered performance, (3) breach of the contract, and (4) damage as a result of the breach. *See Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.−Tyler 2004, pet. denied). The plaintiff is required to prove the following elements underlying the formation of a valid and binding contract: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id*.

Consideration is also a fundamental element of every valid contract. *Id*. Consideration may consist of some right, interest, profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss, or responsibility that is undertaken or incurred by the other party. *In re C & H News Co.*, 133 S.W.3d 642, 647 (Tex. App.−Corpus Christi 2003, orig. proceeding). Application of the consideration requirement depends in part on the nature of the contract. A bilateral contract is one in which there are mutual promises between two parties to the contract, each being both a promisor and a promisee. *Hutchings v. Slemons*, 174 S.W.2d 487, 489 (Tex. 1943). Thus, valid consideration for a bilateral contract involves mutuality of obligation. *In re Palm Harbor Homes, Inc.*, 129 S.W.3d 636, 643 (Tex. App.−Houston [1st Dist.] 2003, orig. proceeding).

In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications. *Critchfield*, 151 S.W.3d at 233. Questions of contract formation must be resolved on objective standards, looking to the meaning reasonably conveyed by the parties' actions and words, rather

5

than their uncommunicated subjective intentions. ***Harrison v. Williams Dental Grp., P.C.***, 140 S.W.3d 912, 916 (Tex. App.–Dallas 2004, no pet.).

Whether an agreement fails for indefiniteness is a question of law to be determined by the court. ***Fiduciary Fin. Servs. of the Sw., Inc. v. Corilant Fin., L.P.***, 376 S.W.3d 253, 256 (Tex. App.–Dallas 2012, pet. denied). A contract is legally binding when its terms are sufficiently definite to enable a court to understand the parties' legal obligations. ***Fort Worth Indep. Sch. Dist. v. City of Fort Worth***, 22 S.W.3d 831, 846 (Tex. 2000). Contract terms are reasonably certain when they provide a basis for determining the existence of a breach and for giving an appropriate remedy. ***Corilant Fin., L.P.***, 376 S.W.3d at 256. If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract. ***Id***.

## Analysis

Swansen testified that she and Helms had an oral agreement that she would leave the home in Helms's park and Helms would try to sell the mobile home for Swansen. Swansen never agreed for Helms to take the mobile home for any purpose other than to resell it. Swansen wanted $50,000.00 for the home, but Helms was authorized to gradually, over time, lower the asking price. Swansen testified that "[i]t was understood that when [Helms] is going to sell it, she is going to get her lot rent back, however much it was." Swansen explained that she did not want to risk losing the title in the mail so she signed the title in Helms's presence, leaving the new owner's name blank, and left it with Helms before she moved to Kansas. Helms was to add the new owner's name to the title when she found a buyer. Swansen testified that she did not give the title to Helms to convey the home to Helms. At the time Swansen moved out, she paid $250.00 per month in lot rent. According to Swansen, it was understood that she did not have to pay lot rent after she moved out. Further, Helms did not owe Swansen any money until she sold the home. Swansen testified that Helms was to take lot rent out of the buyer's payments.

Helms testified that when Swansen moved out in January 2008, she agreed to try to sell the home for Swansen. According to Helms, Swansen could not afford to move the home. Although conclusively disproved by other evidence, Helms said that Swansen owed her $1,800.00 in back rent when she moved out. Helms testified that, as part of the agreement, Helms would receive any lot rent still owed when the home sold. Accordingly, she did not

6

expect Swansen to pay back rent until the home sold. However, Helms said she was not able to sell the home.

Contrary to Swansen's testimony, Helms testified that Swansen did not give her the title at the time they made the agreement that Helms would try to sell the home. Helms testified that Swansen called her in May 2008, after Swansen had moved to Kansas, told her she was filing for bankruptcy, and said she could not repay the debt she owed Helms. Helms stated that Swansen wanted to sign the home over to Helms at that time because she was going to lose it anyway. Helms told Swansen she "would take the home for the debt," which Helms believed was at least $2,700.00 at the time. According to Helms, Swansen then mailed her the title so she could put her own name on the title as payment for the back rent. Helms testified that she accepted the title in satisfaction of the amount she believed Swansen owed at the time. After she accepted the title, making her owner of the mobile home, Helms made a deal with Robert Garcia for him to purchase the mobile home for $25,000.00. He "agreed to owner-finance the home" with Helms. He moved into the home in September 2009, making monthly payments to Helms. Helms sent Swansen two $200.00 checks, but she denied sending them as payments for the mobile home. Helms testified that she sent those checks because Swansen said she was going through a hard time and did not have any groceries. Garcia moved out, and stopped paying, in 2010. Helms testified that she did not try to find another buyer after he moved out. That was not a breach of the agreement, she reasoned, because Swansen had already signed the home over to Helms by then. On May 25, 2010, Helms submitted an application for title to the State of Texas to have title to the mobile home put in her name "to protect [her]self."

The testimony illustrates that the terms of the agreement are sufficiently definite for the trial court to understand the parties' legal obligations and, therefore, there is an enforceable contract. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846. Both parties testified that they had an agreement for Helms to try to find a buyer for Swansen's mobile home. In exchange, Helms received the benefit of having a renter for the lot where the mobile home is located. Further, they both testified that Helms would receive any back rent owed when the home sold. The record evidence supports the trial court's determination that there was an exchange of mutual promises, satisfying the consideration requirement. *See Hutchings*, 174 S.W.2d at 489.

The parties presented different versions of events regarding the title. We presume the trial court resolved the conflict in favor of Swansen, and we disregard Helms's conflicting

testimony.  *See City of Keller*, 168 S.W.3d at 821.  Thus, putting title in her name constituted a breach of the contract by Helms, resulting in Swansen's loss of the home.  *See Critchfield*, 151 S.W.3d at 233.  There is more than a scintilla of evidence supporting the trial court's determination that there is an enforceable contract, including consideration for the contract, and that Helms breached the contract.  *See City of Houston*, 265 S.W.3d at 27.  We overrule Helms's second, third, and fourth issues.

## AWARD OF PROPERTY

In her fifth issue, Helms asserts that the trial court erred by awarding the mobile home to Swansen.  She argues that an award of damages would be appropriate, not an award of a specific piece of property.  Among other arguments, Helms contends that rescission is not appropriate because Swansen did not prove that she offered to put Helms back in the position she was in before the contract was entered by repaying her for money paid for taxes and insurance on the mobile home.

Rescission is an equitable remedy that operates to extinguish a contract that is legally valid, but must be set aside because of fraud, mistake, or some other reason to avoid unjust enrichment.  *Neese v. Lyon*, 479 S.W.3d 368, 389 (Tex. App.−Dallas 2015, no pet.).  It may be available if the other party to the contract has breached the contract in a material part.  *Boyter v. MCR Constr. Co*., 673 S.W.2d 938, 941 (Tex. App.−Dallas 1984, writ ref'd n.r.e.).  To be entitled to the equitable remedy of rescission, a party must show either (1) that she and the other party are in the status quo, i.e., that she is not retaining benefits received under the instrument without restoration to the other party, or (2) that there are special equitable considerations that obviate the need for the parties to be in the status quo.  *Id.*

In her petition, Swansen asked the court to enjoin Helms from selling the mobile home, which would effectively rescind the agreement, and for reformation of the title to reflect that Swansen is the owner.  In Helms's counterclaim, she asked the court to declare that Swansen does not have any ownership interest in the home.  The trial court ordered the title to be reformed and reissued to Swansen.  Accordingly, the trial court determined that Swansen was entitled to possession of the home and effectively rescinded the parties' contract.

Pursuant to the terms of the contract, Swansen retained ownership of the home until it sold.  There was an attempted sale, but it fell through.  Therefore, Swansen remained the owner.

8

Although Helms presented evidence that she paid for taxes, maintenance, repair, and insurance, there is no evidence that she did so pursuant to an agreement with Swansen. Further, Helms's act of applying to put title in her name was a material breach of the parties' agreement. Accordingly, there was no requirement that Swansen put Helms back in the position she was in before they entered into their contract. *See id*. The trial court did not err in ordering the title to the mobile home to be reformed and reissued to Swansen and that Swansen may take possession of the home. We overrule Helms's fifth issue.

**ATTORNEY'S FEES**

In her sixth issue, Helms contends there is no evidence to support the award of attorney's fees. She argues that Swansen elected to use the lodestar method to prove up attorney's fees but her evidence lacks the specificity that method requires. She complains that Swansen did not provide evidence showing specifics such as how much time her attorney worked on the case, what he spent his time on, the skill required, or the novelty or difficulty involved in the case. Therefore, the argument continues, the court cannot analyze whether the tasks performed were necessary and the time spent on them reasonable. In her seventh issue, Helms asserts that Swansen failed to segregate requested attorney's fees by cause of action.

**Applicable Law**

Chapter 38 of the Civil Practices and Remedies Code allows recovery of reasonable attorney's fees in breach of contract cases. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015). A "reasonable" attorney's fee is one that is not excessive or extreme, but rather moderate or fair. *Sullivan v. Abraham*, No. 14-0987, 2016 WL 1513674, at \*4 (Tex. April 15, 2016). We review the decision by a district court to either grant or deny attorney's fees under an abuse of discretion standard, and we review the amount awarded as attorney's fees under a legal sufficiency standard. *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.−Austin 2005, pet. denied). In conducting our legal sufficiency review, we consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.2d at 822. If more than a scintilla of evidence supports the challenged finding, the legal sufficiency challenge fails. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (per curiam).

9

The lodestar method for proving attorney's fees involves evidence relating the hours worked for each attorney multiplied by their hourly rates for a total fee. ***Long v. Griffin***, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam). The supreme court has held that where a party elects to use the lodestar method, the party must offer evidence of the time expended on particular tasks. ***Id***. That party must provide evidence that is sufficiently specific to allow the factfinder to determine the amount of time spent on a particular task and to decide whether that length of time was reasonable. ***El Apple I Ltd. v. Olivas***, 370 S.W.3d 757, 763 (Tex. 2012).

**<u>Analysis</u>**

Swansen testified that she paid Robert Hindman, her attorney, $1,500.00 cash for him to review her case and determine whether he wanted to take the case. He agreed to take the case, but Swansen had no more money and could not pay on an hourly basis. Therefore, she and Hindman entered into a written contingency fee contract. She agreed that Hindman would get forty percent of the value of the mobile home.

Hindman testified regarding his fees. He has been licensed to practice law since 1976. He is familiar with the customary and normal fees charged for cases of this nature, and he testified that the going rate is $250.00 an hour. He took the case on a percentage basis and is to receive forty percent of the market value of the home in addition to the separate fee he charged for reviewing the case before determining that he wanted to take the case "because of its complexity." He explained that he kept a record of the amount of time expended on this case and testified that the time spent was necessary and reasonable. At $250.00 an hour, attorney's fees totaled $12,938.85. Adding court costs of $504.82, the total amount charged was $13,443.67. He specifically testified that "the amount of time based upon the hourly billing rate would have been equivalent to the amount of funds if this trailer is worth $33,000." He explained that his percentage is based solely on what the home actually sells for. He further testified that if this case is appealed, "having had some experience just recently with the retention of an attorney to go before an appellate court at the Court of Appeals level and the Texas Supreme Court, that the going rate for each of that, a reasonable fee is $10,000 per level. . . ." He reiterated that "all of this was necessary and reasonable as to the amount of time and what the charges, therefore, would have been . . . ."

The trial court awarded Swansen $11,443.67 in attorney's fees for "preparation and trial of the case," $10,000.00 if appealed to the court of appeals, and another $10,000.00 if appealed to the supreme court.

Based on our reading of recent supreme court cases, we interpret Hindman's reference to his hourly rate as an election to use the lodestar method. *Long*, 442 S.W.3d at 255 ("The affidavit supporting the Griffins' request for attorney's fees used the lodestar method by relating the hours worked for each of the two attorneys multiplied by their hourly rates for a total fee."); *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam) (held that property owner chose to prove up attorney's fees using the lodestar method by testifying that he arrived at his fee by multiplying the number of hours worked by his hourly rate); *see also Felix v. Prosperity Bank*, No. 01-14-00997-CV, 2015 WL 9242048, at *3-4 (Tex. App.−Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op.) (court applied *El Apple I* requirements where attorney seeking fees pursuant to Texas Civil Practice and Remedies Code Section 38.001 presented evidence of his hourly fee); *Auz v. Cisneros*, 477 S.W.3d 355, 359-60 (Tex. App.−Houston [14th Dist.] 2015, no pet.) (held that *El Apple I* requirements apply where attorney seeking fees pursuant to Texas Civil Practice and Remedies Code Section 38.001 presented evidence that he arrived at his total fee by multiplying his hourly fee by the number of hours he worked); *but see In re E.B.*, No. 05-14-00295-CV, 2015 WL 5692570, at *2 (Tex. App.−Dallas Sept. 29, 2015, no pet.) (mem. op.) (in case brought pursuant to the family code, party who presented evidence of hourly fee and number of hours held to have used traditional method, not lodestar method); *Myers v. Sw. Bank*, No. 02-14-00122-CV, 2014 WL 7009956, at *6 (Tex. App.−Fort Worth Feb. 5, 2015, pet. denied) (mem. op.) (although attorney testified as to his hourly rate and number of hours worked, court characterized case as "ordinary hourly-fee breach of contract case" not requiring time sheets or other detailed hour calculations); *Ferrant v. Graham Assocs., Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *7-8 (Tex. App.−Fort Worth May 8, 2014, no pet.) (mem. op.) (although attorney testified as to his hourly rate and number of hours worked, court characterized case as "ordinary non-lodestar, hourly-fee breach of contract case" not requiring hourly time records); *Metroplex Mailing Servs., LLC v. R.R. Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.−Dallas 2013, no pet.) (drawing distinction between cases governed

by lodestar approach and "non-lodestar awards of fees such as those made in breach of contract cases").[1]

Accordingly, Swansen was required to introduce sufficient evidence to allow the trial court to apply the lodestar method. Counsel noted that this is a complex case, stated his hourly rate, which he characterized as necessary and reasonable, and asked for a total, which he presumably arrived at by multiplying his hourly rate by the number of hours worked. This testimony regarding attorney's fees is generalized. Counsel did not provide testimonial evidence of the time expended on specific tasks. Further, although he kept a record of the time spent on the case, he presented no documentation in support of his request for fees. Without any evidence of time spent on specific tasks, the trial court had insufficient information to meaningfully review the fee request. *Long*, 442 S.W.3d at 255. Thus, the trial court was not provided legally sufficient evidence to calculate a reasonable fee. *Id*. at 254-55.

Additionally, counsel testified to a contingency fee arrangement. His contract with Swansen provided that he would be paid an amount equivalent to forty percent of the actual sales price of the home. While his fee was contingent upon Swansen's being awarded the home, his fee was not contingent upon a damages award. Accordingly, even if supporting evidence is not required for the contingency fee method of proof, that method cannot support the award here because his contract was not based on a percentage of damages and the final judgment awarded no damages.[2] *See Long*, 442 S.W.3d at 256. Accordingly, because the contingency method cannot support the trial court's fee award, and no legally sufficient evidence supports the award under the lodestar method, we remand to the trial court to redetermine attorney's fees. *See id*. We sustain Helms's sixth issue.

In Helms's seventh issue, she contends that Swansen failed to segregate recoverable fees from those incurred on claims for which fees are not recoverable. We do not reach the merits of this argument because Helms did not lodge a trial court objection on this ground and it is therefore waived. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). We overrule Helms's seventh issue.

---

[1] We note that the *El Apple* and *Long* decisions have left some unanswered questions regarding when a party can be said to have elected to use the lodestar method and whether their approach to proving attorney's fees abrogates the statutory language of Texas Civil Practice and Remedies Code Chapter 38. *See* Mark E. Steiner, Will El Apple Today Keep Attorney's Fees Away?, 19 J. OF CONSUMER & COM. LAW 114 (Winter 2016).

[2] We do not address the significance of the fact that the judgment awarded no damages because we are prohibited from addressing unassigned error. *See Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998).

## PRESENTMENT

In her eighth issue, Helms contends that Swansen failed to segregate requested attorney's fees by time. She argues that Swansen is not entitled to fees incurred before the date of presentment and the record does not reflect the date of presentment.

Section 38.002 requires parties to present their claim to the opposing party, and that the opposing party refuse to pay, before a party is entitled to attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (West 2015). The purpose of presentment is to allow the opposing party to pay a claim within thirty days after she has notice of the claim before becoming liable for attorney's fees. *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981).

Here, Hindman testified that, in compliance with the Texas Civil Practice and Remedies Code, he sent a letter, "during the pendency of this" suit, giving Helms thirty days to respond, "laying the groundwork for attorney's fees." Although the date of presentment is not reflected in the record, presentment occurred prior to the date of the hearing. The judgment was signed almost two months after the hearing. Accordingly, presentment occurred more than thirty days before the trial court rendered judgment ordering that Helms is liable for attorney's fees. The statute speaks to the plaintiff's entitlement to attorney's fees and the defendant's opportunity to avoid an obligation to pay attorney's fees. The statute does not limit the award to fees incurred after the date of presentment. We overrule Helms's eighth issue.

## DISPOSITION

We *affirm* that portion of the trial court's judgment concerning title to and possession of the mobile home. Because Swansen did not present legally sufficient evidence to support the award of attorney's fees, we *reverse* that portion of the trial court's judgment awarding attorney's fees to Swansen, and we *remand* the cause to the trial court to redetermine attorney's fees.

BRIAN HOYLE
Justice

Opinion delivered April 29, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 29, 2016

NO. 12-14-00280-CV

**TONDA HARRIS HELMS,**
Appellant
V.
**MARY FRANCES SWANSEN,**
Appellee

___

Appeal from the County Court at Law #2

of Smith County, Texas (Tr.Ct.No. 62,602-A)

___

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the judgment of the trial court below. In accordance with this court's opinion of this date, the judgment of the trial court is **affirmed** in part and **reversed** and **remanded** in part, as follows:

It is therefore ORDERED, ADJUDGED and DECREED that the portion of the trial court's judgment awarding attorney's fees is **reversed** and the cause is **remanded** to the trial court for further proceedings in accordance with this court's opinion.

It is further ORDERED, ADJUDGED, and DECREED that the judgment of the court below is **affirmed** in all other respects.

It is further ORDERED that all costs of this appeal are hereby adjudged against the party incurring same; and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*