**AFFIRM in part, REVERSE and RENDER in part, and REMAND and Opinion Filed September 17, 2024.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01055-CV**

**VIRTUOLOTRY, LLC AND RICHARD BOYD, Appellants**
**V.**
**WESTWOOD MOTORCARS, LLC, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-14833**

## MEMORANDUM OPINION ON REMAND

Before Justices Molberg, Smith, and Kennedy[1]
Opinion by Justice Kennedy

This case involves a commercial lease dispute in which the tenant, Westwood

Motorcars, LLC ("Westwood"), asserted various claims against the landlord,

Virtuolotry, LLC ("Virtuolotry"), and the landlord's owner, Richard Boyd,

including claims of breach of contract and constructive eviction. By counterclaim,

Virtuolotry asserted Westwood breached the commercial lease agreement. A jury

returned a verdict in favor of Westwood, awarding actual damages against

---

[1] Justice Nancy Kennedy succeeded Justice David Schenck, author of the original memorandum opinion. Justice Kennedy has reviewed the briefs and record before the Court.

Virtuolotry for breach of contract and awarding actual and exemplary damages against Boyd in connection with Westwood's constructive eviction claim. The trial court reduced the exemplary damages award to the statutory cap of $200,000,[2] and otherwise rendered judgment in accordance with the jury's verdict. The parties agreed to try the issue of attorney's fees to the court after the jury trial, and the court included its award of fees in the final judgment.

In our original opinion, we concluded that by agreeing to the issuance of writ of possession to Virtuolotry in a forcible detainer action instituted by Virtuolotry, Westwood effectively abandoned its constructive eviction claim and was precluded from recovering damages for breach of contract premised on the issue of possession. *Virtuolotry, LLC v. Westwood Motorcars LLC*, 684 S.W.3d 466, 469 (Tex. App.—Dallas 2022), *rev'd*, 689 S.W.3d 879 (Tex. 2024). Accordingly, we sustained Virtuolotry's fourth issue asserting Westwood is barred from asserting its claims by consenting to judgment, and we reversed and rendered a take-nothing judgment. As a result, we did not address Westwood's remaining nine issues.

Thereafter, the Supreme Court of Texas granted Westwood's petition for discretionary review and concluded the judgment adjudicating immediate possession in the forcible detainer action does not bar or have any preclusive effect on a suit in district court for damages arising out of the same landlord–tenant

---

[2] *See* TEX. CIV. PRAC. & REM. CODE § 41.008(b) (exemplary damages may not exceed an amount equal to the greater of (1) two times the amount of economic damages, plus an amount equal to any noneconomic damages found by the jury, not to exceed $750,000 or (2) $200,000).

relationship. *Westwood Motorcars, LLC v. Virtuolotry, LLC*, 689 S.W.3d 879, 885 (Tex. 2024). The supreme court reversed the judgment of this Court and remanded the case to us for consideration of the unaddressed issues presented on appeal.

On remand, we conclude Westwood is not entitled to recover actual and exemplary damages from Boyd and Westwood is not entitled to recover both benefit of the bargain damages and lost profits on its breach of contract claim against Virtuolotry. Accordingly, we affirm the trial court's judgment in part, reverse and render in part, and remand the issue of attorney's fees.

## BACKGROUND

Westwood leased commercial property in Dallas (the "Premises") to operate a high-end used car dealership. The base monthly rent during the initial term of the lease was $10,000.[3] The initial term of the lease was set to expire in 2013, but an addendum permitted Westwood to extend the lease for two additional terms of twenty-four months each.[4] In July or August 2013, Westwood exercised its option to extend the lease for the first twenty-four month renewal term, making the expiration date of the lease December 31, 2015, absent a further extension. The base monthly rent for the first renewal term increased from $10,000 to $11,500.

---

[3] It is apparent from the testimony at trial that this rental rate was below market.

[4] In order to extend the term of the lease, Westwood was to give written notice to the landlord at least 90 days before the end of the then current term of the lease. Westwood was not entitled to exercise its extension option if the lease was terminated before it exercised its option or if it was in breach of the lease at the time it exercised its option to extend.

In June 2015, Virtuolotry became the owner of the Premises, after the original landlord's lender foreclosed on the Premises. As a result, Virtuolotry became Westwood's landlord. Two months later, Westwood sought to exercise its option to extend the lease for the second renewal term. Virtuolotry refused to extend the term claiming Westwood had breached the lease agreement in numerous respects.

On December 9, 2015, Westwood sued Virtuolotry in district court seeking a declaratory judgment that it had not breached the lease and had properly extended same for an additional two years.

On December 31, 2015, Virtuolotry filed a petition for eviction in the justice court and prevailed. Westwood appealed that decision to the county court. On February 29, 2016, Westwood provided notice to Virtuolotry that it would leave the Premises at the end of March 2016, and withdrew its appeal, stating it was doing so "[i]n an effort to avoid wasting the resources of both the parties and the Court." On March 22, Virtuolotry locked Westwood out of the premises. On March 23, Westwood obtained an ex parte writ of reentry. On March 24, the county court signed an "Agreed Judgment" in which "the Parties stipulate[d] and agree[d] . . . that possession of the Premises is awarded to [Virtuolotry]" and that "the Clerk of the Court issue a writ of possession to [Virtuolotry]." On March 25, Westwood removed its vehicles from the Premises.

On March 22, 2016, Virtuolotry filed a counterclaim against Westwood and a third-party claim against Vera Hajduch, one of Westwood's owners, in the district

court case asserting Westwood breached the lease agreement and Hajduch breached a commercial lease guaranty. Thereafter, Virtuolotry amended its counterclaim and third-party claim adding Igor Hajduch (Hajduch's husband), Alexander Hajduch (Hajduch and Igor's son), and Westwood Motors, LLC (an entity the Hajduch family formed on February 26, 2016) as parties and adding conversion, trespass, property code violation, and fraudulent transfer claims.

On October 17, 2016, Westwood amended its petition in the district court adding Boyd as a defendant, asserting affirmative claims for relief, including a breach of contract claim against Virtuolotry and a constructive eviction claim against Virtuolotry and Boyd. Further amendments to Westwood's pleadings did not materially change the allegations against Virtuolotry and Boyd.

Pretrial, the trial court granted Westwood and the third-party defendants' traditional and no evidence motion for summary judgment on Virtuolotry's breach of contract claim on the grounds that (1) Virtuolotry's October 30, 2015 notice letter was insufficient as a matter of law, and any termination of the lease based on this letter was ineffective under Texas law, and (2) there is no evidence supporting Virtuolotry's claim for breach of the lease agreement.

The district court case proceeded to a several days' long jury trial in February 2019. The jury found Virtuolotry breached the lease and caused Westwood damages of $463,356 for lost profits, $308,875 for the lost benefit of the bargain under the lease, and $11,500 for its security deposit. The jury also found Virtuolotry and Boyd

constructively evicted Westwood, resulting in damages of $23,331.37 for relocation expenses and warranting the imposition of exemplary damages against Boyd in the amount of $538,036.19. On May 20, 2019, the trial court signed a judgment in favor of Westwood and against Virtuolotry in the amount of $783,731 for breach of contract, and against Boyd for constructive eviction awarding Westwood $23,331.37 in actual damages and $200,000 in exemplary damages. The trial court awarded Westwood attorney's fees in the amount of $352,444 and costs of litigation in the amount of $25,524.06 and ordered that Virtuolotry take nothing on its counterclaims against Westwood and on all of its third-party claims with the exception of Virtuolotry's breach of guaranty claim against Hajduch, which had been severed prior to trial. In addition, the trial court declared, pursuant to the Texas Uniform Declaratory Judgments Act, that the lease and the addendum constitute a valid and enforceable agreement between Westwood and Virtuolotry, that Westwood timely provided notice of its intent to renew the lease for a second renewal term as required by the lease and addendum, that the lease was renewed for the second term through December 31, 2017, and that the base monthly rent was $11,500, and that Westwood was not in default or breach of the lease.

**DISCUSSION**

## I.  Extension of Lease Term

We begin with Virtuolotry and Boyd's third issue, asserting the judgment rests on an unenforceable agreement to agree, as it is potentially dispositive of this appeal.

–6–

Virtuolotry and Boyd contend the evidence conclusively established the lease agreement terminated on December 31, 2015 because the extension provision did not contain an essential term, that being the amount of the monthly rent. Thus, concludes Virtuolotry and Boyd, there is no support for a judgment on Westwood's breach of contract and constructive eviction claims. Westwood responds urging Virtuolotry and Boyd waived this argument by not asserting it as an affirmative defense and, even apart from waiver, the lease and its addendum are enforceable because they were ratified by both the original landlord and Virtuolotry, and Texas law does not require that a specific dollar figure be agreed on for a contract to be enforceable. We need not address Westwood's waiver and ratification arguments because we conclude the extension provision is not an unenforceable agreement to agree.

We recognize that, in general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations. *Fiduciary Fin. Servs. of Sw., Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied). When an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016); *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). An agreement to agree is unenforceable and cannot support a judgment for breach of contract. Whether an alleged agreement constitutes

–7–

an enforceable contract is generally a question of law. *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.).

Virtuolotry contends that the following provision in the Commercial Lease Addendum for Extension is an agreement to agree:

> IF TENANT DOES NOT DELIVER A 90 DAY WRITTEN NOTICE TO LANDLORD TO EXTEND THE LEASE THEN LANDLORD HAS THE RIGHT TO MARKET AND LEASE THE PROERTY TO ANOTHER PARTY.
>
> THE BASE MONTHLY RENT FOR EACH TERM SHALL BE AGREED UPON BY THE LANDLORD AND TENANT AT LEAST 90 DAYS PRIOR TO THE EXPIRATION OF THE LEASE. THE BASE MONTHLY RENT SHALL NOT INCREASE BY MORE THAN 15% FOR THE FIRST TERM AND 10% FOR THE SECOND TERM FROM THE PREVIOUS TERM'S BASE MONTHLY RENT.

Texas law does not require that a specific dollar figure be agreed on for a contract to be enforceable. *See Norton v. Menard Lumber Co.*, 523 S.W.2d 791, 793 (Tex. App.—San Antonio 1975, no writ). An agreement to render performance at a price that shall not exceed a specified amount is valid as an agreement at the stated maximum. *Id.* There is no rule prohibiting the fixing of a minimum and maximum price. *Id.*; *Paul Blackwell Co. v. Dallas Transfer & Terminal Warehouse Co.*, 252 S.W.2d 501, 503–04 (Tex. App.—El Paso 1952, writ ref'd n.r.e.). When the offer is stated in terms of maximum and minimum price, the acceptance of the offer results in the formation of a contract which fixes the price at the stated maximum. *Norton*, 523 S.W.2d at 793.

The evidence at trial established the initial base monthly rent was $10,000

and the base monthly rent for the first renewal term was $11,500. Accordingly, pursuant to the addendum, the minimum base monthly rent for the second renewal term was $11,500 and the maximum was $12,650. The jury decided the base monthly rent for the second renewal term was $11,500. We conclude the evidence presented in this case established the extension provision is not so indefinite and uncertain as to preclude enforcement.

Moreover, the evidence established Virtuolotry failed to propose a base monthly rent for the second renewal term. When, as here, the lessor fails to propose any rate at all, it will be deemed to have waived its right to propose the rate and that the amount would be determined by the court, or the factfinder. *Aycock v. Vantage Mgmt. Co.*, 554 S.W.2d 235, 238 (Tex. App.—Dallas 1977, writ ref'd n.r.e.). The lessor is required to act in good faith under the lease and the lessor is not permitted to frustrate the procedure by either not proposing a renewal rate or by proposing an unreasonably high renewal rate. *Id*. at 237–38; *see e.g.*, *Arena Tower II Corp. v. Novick*, No. 14-96-01335-CV, 1999 WL 33616, at *2 (Tex. App.—Houston [14th Dist.] Jan. 28, 1999, writ denied) (not designated for publication) (holding evidence supported court's finding lessor did not act in good faith in renewing lease, thus waiving its right to propose any rate and court was justified in determining the appropriate amount for then prevailing rate). Even when one party has the discretion to determine the amount under a contract, that party cannot invalidate the contract by refusing to exercise its discretion. *Lone*

*Star Steel Co. v. Scott*, 759 S.W.2d 144, 152–53 (Tex. App.—Texarkana 1988, writ denied). Because Virtuolotry failed to propose any new base rental rate, it waived the right to propose a new rate and the jury was entitled to determine the amount. For the foregoing reasons, we resolve Virtuolotry and Boyd's third issue against them.

## II. Constructive Eviction

In their first issue, Virtuolotry and Boyd assert no evidence exists to support a finding Boyd constructively evicted Westwood from the Premises because there was no landlord–tenant relationship between Westwood and Boyd to support a constructive eviction claim. In response, Westwood asserts Boyd can nevertheless be held personally liable for his own torts.

In addressing a legal sufficiency or no-evidence challenge, we must consider only the evidence and inferences, viewed in their most favorable light, that support the jury's finding, and we must disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex. 1986); *Argyle Mech., Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.). If there is more than a scintilla of evidence to support a finding, then the no-evidence challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). When the evidence offered to prove a vital fact is so weak it does nothing more than create a mere surmise or suspicion of its existence, the evidence

is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

The record before us establishes Virtuolotry filed a forcible detainer action against Westwood. The justice court found in favor of Virtuolotry, and Westwood appealed to the county court. Thereafter, the county court signed an "Agreed Judgment" in which "the Parties stipulate[d] and agree[d] . . . that possession of the Premises is awarded to [Virtuolotry]" and that "the Clerk of the Court issue a writ of possession to [Virtuolotry]." These undisputed facts establish Westwood was actually evicted from the Premises. If an actual eviction occurs, there can be no constructive eviction.[5] *See Schneider v. Lipscomb Cnty. Nat'l Farm Loan*, 202 S.W.2d 832, 834–35 (Tex. 1947). On this record, no evidence exists to support the finding of constructive eviction and the award of damages therefrom.[6] Accordingly, we sustain Virtuolotry and Boyd's first issue. Because we hold no evidence supports the jury's finding of constructive eviction and the award of actual damages therefrom, exemplary damages are not available. *See Radiant Fin., Inc. v. Bagby*,

---

[5] We note that, in remanding this case to this Court, the supreme court stated that it has not expressly recognized constructive eviction as an affirmative claim for relief and that, because it was not necessary to do so, it expressed no opinion on the issue in reaching its conclusion the agreed judgment in the detainer action did not preclude pursuit of the breach of contract claim against Virtuolotry in the district court case. *Westwood Motorcars*, 689 S.W.3d at 882. This Court has appeared to recognize such a claim. *See, e.g.*, *Kemp v. Brenham*, No. 05-18-01377-CV, 2020 WL 205313, at *1 (Tex. App.—Dallas Jan. 14, 2020, pet. denied) (mem. op.); *Daftary v. Prestonwood Market Square, Ltd.*, 404 S.W.3d 807, 816 (Tex. App.—Dallas 2013, pet. denied); *Steinberg v. Med. Equip. Rental Servs., Inc.*, 505 S.W.2d 692, 696–97 (Tex. App.—Dallas 1974, no writ).

[6] While a tenant does not have a constructive eviction claim if an actual eviction occurs, it may, nevertheless, have a wrongful eviction claim. Westwood did not assert such a claim here.

–11–

No. 05-16-00268-CV, 2017 WL 2927825, at *6 (Tex. App.—Dallas July 10, 2017, pet. denied) (mem. op.) (citing *Burbage v. Burbage*, 447 S.W.3d 249, 263 (Tex. 2014)).  Accordingly, we sustain Virtuolotry and Boyd's second issue addressing the propriety of the exemplary damages award against Boyd.  In light of our rulings on Virtuolotry and Boyd's first and second issues, we need not address the portion of their fifth issue addressing the evidence of damages Westwood presented in connection with its constructive eviction claim.[7] Tex. R. App. P. 47.1.

## III.  Damages

### A. Damage Model Relying on Sales of Westwood Motor

In their fifth issue, Virtuolotry and Boyd assert the judgment erroneously awards damages to Westwood based on harm incurred by Westwood Motors, a separate legal entity the owners of Westwood created to carry on the automobile sales business after Westwood vacated the Premises.  Westwood responds asserting Virtuolotry and Boyd waived this complaint because they failed to assert a capacity affirmative defense below and that, nevertheless, the complaint lacks merit.  Assuming without deciding this complaint was preserved for our review, we resolve the merits against Virtuolotry and Boyd.

As an initial matter we note that the jury was instructed to compensate Westwood for the damages it incurred, not the harm incurred by Westwood Motors.

---

[7] In their fifth issue, Virtuolotry and Boyd assert the judgment awards constructive eviction damages (against Boyd), and breach-of-contract damages (against Virtuolotry) for damages incurred by Westwood Motors, not Westwood.

–12–

In analyzing lost profits, the focus is not on the business entity, but on the business activity that is alleged to have been damaged. *Tex. Instruments Inc. v. Teletron Energy Mgt., Inc.*, 877 S.W.2d 276, 280 (Tex. 1994) ("if lost profits were recoverable for damage to a business activity of the XYZ Corporation, they should not be denied simply because the activity was conducted by a subsidiary newly formed for that purpose which XYZ controlled and managed. The focus is on the experience of the persons involved in the enterprise and the nature of the business activity, and the relevant market.").

The evidence in this case established the owners of Westwood created the new entity because they were concerned that Virtuolotry's and Boyd's actions would negatively impact the existing business. The evidence established that Westwood Motors was conducting the exact same business that Westwood had been conducting at the Premises. Other than the name and the location, there was no difference in the manner in which the business was run. After Westwood left the Premises, it had no sales. Rather than base its lost profits model on zero sales compared to previous sales, Westwood's model compared Westwood's sales to Westwood Motors'. We conclude it was appropriate under these circumstances to use Westwood Motors' sales as a yardstick and as part of a before and after analysis to measure Westwood's lost profit damages. *See Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974). We overrule Virtuolotry and Boyd's fifth issue.

**B. Double Recovery**

In their eighth issue, Virtuolotry and Boyd contend Westwood was afforded a double recovery by being awarded both lost profits and benefit of the bargain damages. Westwood urges this issue was not preserved because Virtuolotry and Boyd did not object to the jury question on breach of contract damages as seeking a double recovery and because Virtuolotry and Boyd did not plead election of remedies as an affirmative defense.

**1. Preservation**

Virtuolotry and Boyd contend no objection was necessary because the charge gave the pattern instruction for cases involving potentially overlapping categories of damages, sometimes referred to as the "*Golden Eagle*" instruction based on the Supreme Court of Texas' decision in *Golden Eagle Archery, Inc. v. Jackson* that encouraged use of the instruction as it is intended to avoid double awards of damages because it informs the jury that it is not to make a duplicative award of damages. 116 S.W.3d 757, 770 (Tex. 2003) (approving the instruction given in *French v. Grigsby*, "In answering this special issue you shall not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss, that is, do not compensate twice for the same loss, if any."). In response, Westwood relies on this Court's decisions in *Tasi v. Chang* and *Premier Pools Management Corp. v. Premier Pools Inc. See Tsai v. Chang*, No. 05-00-00177-CV, 2001 WL 717807, at *11 (Tex. App.—Dallas June 27, 2001, pet. denied)

–14–

(not designated for publication) (holding appellants waived double recovery complaint because they did not object about the jury question allowing for recovery of both emotional distress and mental anguish); *Premier Pools Mgmt. Corp v. Premier Pools, Inc.*, No. 05-14-01388-CV, 2016 WL 4258830, at *8 (Tex. App.—Dallas Aug. 12, 2016, pet. denied) (mem. op.) (while noting no objection to the jury charge, the Court concluded that under some circumstances an award of lost profits and disgorgement of profits can result in a double recovery, those circumstances did not exist in that case).

Here, in connection with the jury question on damages for breach of contract, the jury charge instructed, in part:

> Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on an element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any.

The jury was then asked to answer separately, in dollars and cents, for damages, if any, for lost profits, reasonable and necessary expenses incurred in relocating the business, and the difference between the rental rate in the lease agreement and the fair market rental value for the remaining unexpired lease term, including extensions of the lease (benefit of the bargain damages).

Because the jury charge here submitted more than one acceptable measure of damages, not identical damages with different identifiers, we conclude Virtuolotry and Boyd were not required to object to the charge to preserve their double recovery

–15–

claim. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (no objection necessary when court submits more than one acceptable measure of damages to preserve error on issue of actual damages double recovery). Virtuolotry and Boyd objected to Westwood's proposed form of judgment awarding it lost profits and the rental value differential on the basis that awarding both would provide Westwood with a double recovery and stated, "Westwood must be required to elect between the remedies." Thus, Virtuolotry and Boyd raised their complaint below. *See id.* (complaint preserved when a request for election of remedy is made before judgment).

With respect to Westwood's contention that Virtuolotry and Boyd waived their complaint about a double recovery by failing to plead election of remedies as an affirmative defense, we recognize that under some circumstances election of remedies is an affirmative defense. Those circumstances generally involve a variant of res judicata where a plaintiff is barred from bringing a lawsuit after being fully compensated for their injury via another avenue, such as a worker's compensation claim. *See, e.g.*, *Compass Bank v. MFP Fin. Servs.*, 152 S.W.3d 844, 852–54 (Tex. App.—Dallas 2005, pet. denied); *see also Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980) ("The election doctrine . . . may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice."); *Boullt v. Smith*, No. 03-02-00303-CC, 2004 WL

2357881, at \*4 (Tex. App.—Austin Oct. 21, 2004, no pet.) (mem. op.) ("If an employee opts to receive worker's compensation benefits for an injury sustained in the scope of his employment, the employee may be considered to have made an election of remedies and thus be barred from seeking damages for an intentional tort from his employer."). Those circumstances do not exist here.

## 2. Applicable Law

The goal in measuring damages for a breach of contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148 (Tex. App.—Dallas 2012, no pet.). The normal measure of damages in a breach of contract case is the expectancy or benefit of the bargain measure. *Id.* The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *Parkway Dental Assoc., P.A. v. Ho & Huang Prop., L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Damages are duplicative only if they compensate the plaintiff for the same injury. *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 641 (Tex. App.—Waco 2000, pet. denied).

Here, Westwood claimed Virtuolotry breached the lease by refusing to extend the lease term thereby interfering with its possession of the Premises. A proper measure of general damages under these circumstances is the difference between the market rental value of the leasehold for the unexpired term of the lease and the stipulated rental rate. 17 TEX.JUR.2d Damages § 54; *see also Briargrove Shopping*

–17–

*Ctr. Jt. Venture v. Vilar, Inc.*, 647 S.W.2d 329, 336 (Tex. App.—Houston [1st Dist.] 1982, no writ); *Birge v. Toppers Menswear, Inc.*, 473 S.W.2d 79, 84 (Tex. App.—Dallas 1971, writ ref'd n.r.e.). By permitting the tenant to recover the difference between the market rental value of the leased premises for the unexpired term and the rental reserved in the contract, he is in a position to obtain other premises similarly situated and equally desirable, and thus will be adequately compensated for the loss he sustains. *B.G. Avery & Sons Plow Co. v. Kennedy*, 12 S.W.2d 140, 141 (Tex. 1929). Further, recovery may be had for special damages incurred, such as expenses of removal and lost profits.[8] *Fryer v. Cantu*, No. 13-97-00460-CV, 1999 WL 33320965, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 5, 1999, no pet.) (not designated for publication); *Design Ctr. Venture v. Overseas Multi-Projects Corp.*, 748 S.W.2d 469, 473 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *Briargrove*, 647 S.W.2d at 336; *Birge*, 473 S.W.2d at 84. But a tenant cannot recover lost profits and the market value of his lease also, for such would allow him a double recovery. *See Birge*, 473 S.W.2d at 84 (citing *Oscar v. Sackville*, 253 S.W. 651, 653 (Tex. App.—Austin 1923, writ ref'd) ("To permit a recovery for the loss of profits, and also an additional recovery for the difference in the rental value of the premises . . . would allow a double recovery, since appellant would be made whole under her contract when she recovered the loss of profits to her business, without

---

[8] Lost profits may be direct or consequential damages. *DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 183 (Tex. App.—Fort Worth 2012, no pet.).

regard to the rental value of the leased premises."); *see also Design Ctr.*, 748 S.W.2d at 473 (recovery may be had for special damages incurred, such as expenses of removal and net profits, after deduction of the value of the rental differences); *Briargrove*, 647 S.W.2d at 336 n.1 (an award including both market value differential and lost profits would give tenant double recovery).

### 3. Application of Law to Facts

Here, the judgment awarded Westwood breach of contract damages of $783,731 consisting of $463,356 in lost profits and $308,875 for the rental value differential. The stipulated rental amount was included in the lost profits analysis. Under the circumstances presented here, lost profits and rental value differential were alternative measures of damages for the injury Westwood suffered as a result of Virtuolotry's breach of the lease agreement. Westwood was entitled to recover either lost profits or rental value differential, but not both. *Birge*, 473 S.W.2d at 84. Accordingly, we sustain Virtuolotry and Boyd's eighth issue.

### C. Damages Experts

In their ninth issue, Virtuolotry and Boyd urge no evidence supports the lost profits and rental value differential damages awarded because the evidence presented rested on legally insufficient expert testimony.

## 1. Lost Profits Expert

Westwood's expert on lost profits was Sydney Thompson.[9]  Virtuolotry and Boyd claim Thompson was not qualified to give an opinion on lost profits because his opinion relating to same was based on an inadequate foundation due to his lack of familiarity with the high-end used car industry, how a successful car dealer attracts customers, and what practices affect business expenses.  In addition, Virtuolotry and Boyd claim Thompson reviewed unreliable, uncorroborated data about the wrong business (Westwood Motors).[10]  Westwood responds by urging Thompson was qualified to opine on the issue of lost profits, that his testimony was reliable, and that consideration of Westwood Motors profits after Westwood vacated the Premises factored into recognized methods for analyzing damages.

### a.    Qualification

The determination of whether an expert witness is qualified to testify on a particular subject is left largely to the trial court's discretion and will not be disturbed on appeal absent a showing that the court clearly abused that discretion.  *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996).  The type of education and experience pertinent to lost profits testimony relates to accounting and finance.  *Spin Doctor*

---

[9] Westwood did not present Thompson as a causation witness.  Thompson testified as to the amount of profits Westwood would have obtained post vacating the Premises had it continued operating in the same fashion as it had from 2012 through 2015.

[10] With respect to Virtuolotry and Boyd's complaint concerning Thompson comparing Westwood's 2015 through 2015 tax returns with Westwood Motors' 2016 through 2017 tax returns, we have already resolved that issue against them.  *See Tex. Instruments, Inc.*, 877 S.W.2d at 280 (focus of lost profit analysis is not on the business entity, but on the business activity that is alleged to have been damaged).

–20–

*Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 360 (Tex. App.—Dallas 2009, pet. denied). This Court has held that a certified public accountant who performed hundreds of lost profits evaluations within a sixteen-year career was qualified as an expert. *See Bright v. Addison*, 171 S.W.3d 588, 601 (Tex. App.—Dallas 2005, pet. denied). With respect to Virtuolotry and Boyd's complaint regarding Thompson's purported lack of knowledge of the high-end used car industry, we note that detailed knowledge of a specific *industry* is not relevant to a lost profits analysis. *Spin Doctor*, 296 S.W.3d at 361 ("[D]etailed knowledge of the golf club manufacturing industry is not relevant to a profits analysis. The type of industry is not relevant to the accounting principles employed in conducting a lost profits analysis."); *see also Bright*, 171 S.W.3d at 601–602 (rejecting argument that accountant was not qualified to testify as an expert on lost profits because he had limited experience with casinos).

Thompson testified he has a bachelor's and a master's degree in business administration, specializing in finance. He obtained those degrees in 1973 and 1974, respectively. He further explained that he has spent most of his life in the financial services industry and has done valuations and fairness opinions in connection with initial public offerings, mergers and acquisitions, and related activities. In addition, as an expert witness, Thompson has analyzed and calculated damages in commercial litigation cases. We conclude Thompson's experience in valuations and damage models amounts to knowledge, skill, experience, training, or education qualifying him as an expert on the issue of lost profits. *See KMG Kanal-Muller-Gruppe*

*Deutschland GmbH & Co. KG v. Davis*, 175 S.W.3d 379, 390 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (expert qualified to testify regarding lost profits based on education and experience in business valuation); *U.S. Renal Care, Inc. v. Jaafar*, 345 S.W.3d 600, 607–608 (Tex. App.—San Antonio 2011, pet. denied) (rejecting argument expert witness with bachelor's and master's degrees in finance was not qualified to testify regarding damages because he did not have an accounting degree). Accordingly, we conclude Virtuolotry and Boyd's challenge to Thompson's qualification is without merit.

### b.      Standard of Review for Reliability

An expert's opinion, to be admissible, must be relevant and reliable. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002). To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology. *State v. Cent. Expressway Sign Assoc.*, 302 S.W.3d 866, 870 (Tex. 2009). We review a trial court's determination concerning the reliability of a witness's testimony for an abuse of discretion. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001). An expert's opinion is not reliable if there is simply too great an analytical gap between the data and the opinion proffered. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998). Further, an expert's opinion is not reliable if the foundational data is unreliable or if the expert draws conclusions from sound data based on flawed

methodology. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997).

### c.        Applicable Law of Lost Profits

Lost profits are damages for the loss of net income to a business. *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). Recovery for lost profits does not require that the loss be susceptible to exact calculation. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010). However, the injured party must do more than show that they suffered some lost profits. *Id.* At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Id.*; *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 712 (Tex. App.—Dallas 2012, no pet.). Reasonable certainty is not demonstrated when the profits claimed to be lost are largely speculative, as from an activity dependent on uncertain or changing market condition, on chancy business opportunities, or on promotion of untested products or entry into unknown markets or unproven enterprises. *Tex. Instruments*, 877 S.W.2d at 279 (Tex. 1994).

### c.        Methodology

To be reliable, the opinion must be based on sound reasoning and methodology. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Texas Rule of Evidence 703 allows an expert to rely upon facts or data of a type reasonably relied upon by experts in the field, even if the facts or data are

inadmissible in evidence. TEX. R. EVID. 703. In cases such as this, the general reliability test of *Gammill*, rather than the *Robinson* test for reliability of scientific opinions,[11] is the appropriate test. *See DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 190 (Tex. App.—Fort Worth 2012, no pet.) (citing *Gammill*, 972 S.W.2d at 726). The general reliability test requires that the trial court determine whether the testimony is supported by more than credentials and *ipse dixit* of the expert and to ensure that the opinion comports with applicable professional standards and has a reliable basis in the knowledge and experience of the discipline. *Gammill*, 972 S.W.2d at 725–26.

There is no one proper method of determining lost profits as damages. *DaimlerChrysler Motors*, 362 S.W.3d at 190 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998) (noting that supreme court was "not retreating from our refusal to endorse one method for determining lost profits") (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W2d 80, 85 (Tex. 1992)). "Yardstick" and "before and after" are two generally recognized methods of determining lost profits as damages. *Lehrman*, 500 F.2d at 667. The yardstick method consists of a study of profits from business operations that are closely comparable to that of a plaintiff. *DaimlerChrysler Motors*, 362 S.W.3d at 190. The business used as a standard must be as nearly identical to the plaintiff's as

---

[11] *Robinson* identified six nonexclusive factors for determining whether scientific evidence is reliable. *Robinson*, 923 S.W.2d at 556.

possible. *Lehrman*, 500 F.2d at 667. Texas courts have accepted the yardstick analysis specifically for determining lost profits from a new business by using a comparable established business that is also owned and operated by the plaintiff. *DaimlerChrysler Motors*, 362 S.W.3d at 190; *Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc.*, 138 S.W.3d 915, 925 (Tex. App.—Dallas 2004, pet. struck); *Pena v. Ludwig*, 766 S.W.2d 298, 303 (Tex. App.—Waco 1989, no writ) ("Logically, the location, services, personnel, and management of two separate businesses could be so similar that the business and profits of one would serve as a reliable basis for calculating lost profits of the other."). The "before and after" method compares profits before the breach with profits after the breach. *Coca-Cola Co. v. Harmar Bottling Co.*, 111 S.W.3d 287, 308 (Tex. App.—Texarkana 2003), *rev'd other grounds*, 218 S.W.3d 671 (Tex. 2006).

Moreover, the reasonableness or reliability of the methodology goes to the weight and not the admissibility. *See Pena*, 766 S.W.2d at 304 (holding reasonableness or reliability of methodology went to weight and not admissibility where profits of established business of plaintiff could serve as a reliable basis for calculating lost profits of new business; plaintiff was primarily responsible for operating both shops and familiar with their management and financial condition, and factual data from established business provided sound basis for probable loss to new business).

### d. Analysis

Citing an unpublished case from the United States District Court, D. Delaware, Virtuolotry and Boyd contend Thompson's methodology was not proper expert testimony because he merely played the role of a human calculator averaging numbers. *See AgroFresh, Inc. v. Essentiv LLC*, C.A. No. 16-662 (MN), 2019 WL 9514565, at *1 (D. Del. Oct. 7, 2019) (finding allowing witness to offer expert testimony consisting solely of adding numbers detached from the actual trade secret issues does not fit the issues to be tried and is not helpful). Virtuolotry and Boyd's argument ignores the fact that Thompson's analysis went further than just adding and subtracting numbers. Thompson spoke with Westwood's manager and accountant to gain an insight into the business and its expenses and to determine whether the expenses were properly categorized.

With respect to the methodology Thompson used, he considered the profitability of Westwood in the years preceding the breach and compared same with the profitability of Westwood Motors from the time Westwood vacated the Premises to the end of the second renewal term. While it is undisputed Westwood and Westwood Motors are distinct legal entities, the evidence presented established Westwood Motors essentially carried on the business Westwood had previously conducted after Westwood vacated the Premises; it performed the same business activity as Westwood using the same assets, under the leadership of the same principals, and there was no difference in the way Westwood's principals operated

the business.  Other than the name and location, there were no differences in how Westwood Motors conducted the business post Westwood vacating the Premises. Accordingly, it appears Thompson utilized a combination of the "yardstick" and "before and after" methods of determining damages.  These damages models are time-tested and appropriate. *Coca-Cola Co.*, 111 S.W.3d at 309.

With respect to the information Thompson considered in formulating his opinion, he was provided tax returns, including Schedule C, business profit and loss forms, for Westwood for the years 2012 through 2015 and for Westwood Motors for the years 2016 and 2017.  He explained that he used that information as a foundation for his projections going forward.  Citing a Fifth Circuit opinion applying Mississippi law, Virtuolotry and Boyd contend Westwood's and Westwood Motors' Schedule C, business profit and loss forms, do not provide a foundation upon which a jury could form a fair and reasonable assessment of lost profits.  *See Work v. Commer. Underwriters Ins. Co.*, 61 Fed. Appx. 120, 2003 WL 342314, at *2 (5th Cir. 2003).  In *Work*, the plaintiff included equipment depreciation as a business expense on each of the Schedule C forms.  *Id.*  In that case, if the plaintiff had not taken these deductions, he would have had a net gain in 1997 of $213,257 and a net gain in 1999 of $47,203, rather than the losses his Schedule C forms reported.  *Id.* In addition, the court noted numerous additional deficiencies in the plaintiff's lost profits  evidence  and  concluded  that  his  tax  returns  did  not  contain  enough

information from which to calculate his lost income with reasonable certainty. *Id.* at *3.

In the current case, Virtuolotry and Boyd have not established Thompson's lost profit calculation was inadequate due to missing expenses or improperly included expenses. *See Baker v. Habeeb*, No. 05-16-01209-CV, 2018 WL 1835566, at *9 (Tex. App.—Dallas Apr. 18, 2018, pet. denied) (mem. op.) (citing *Swinnea*, 318 S.W.2d at 879) ("It is not necessarily the case that a company will incur increased expense or overhead, especially if the company is already profitable at the time the damage began and evidence supports an inference that it could have performed profitable services using only its existing resources."). And Thompson testified the tax returns are the best information available and that he considered them to be more reliable than the books and records of the company because there is a penalty for filing a bad tax return, and no penalty for keeping bad books. Moreover, the record establishes that in addition to Westwood's and Westwood Motors' tax returns, Thompson reviewed Westwood's monthly sales reports, including a spreadsheet that summarized this information, and he talked with the accountant who prepared the tax returns. Thompson discussed Westwood's and Westwood Motors' expenses with the accountant to assure that he had an accurate understanding of the expenses and that his damage model properly categorized them. In addition, Thompson spoke with Westwood's manager about the operation of the business who attested that the manner in which Westwood and Westwood Motors

maintained their records remained consistent from 2012 through 2017. With this information in hand, Thompson determined Westwood had an average annual net profit of $286,684 for years 2012 through 2015. Westwood Motors operated at the new location beginning on or about April 1, 2016. Thompson projected net profits from April 1 through December 31, 2016 at $215,013. He compared the projected number with the actual results for Westwood Motors in 2016, a net profit of $190,551, resulting in a difference of $24,462. He compared the $268,684 average for 2012 through 2015, to the number reported on Westwood Motors' 2017 Schedule C form, which showed a loss of $152,210, resulting in a difference of $438,894. The combined differences totaled $463,356.

Thompson utilized a satisfactory methodology to calculate lost profits. His opinions were based on objective facts, figures and data, and therefore constituted some evidence of damages. Virtuolotry and Boyd brought the deficiencies they alleged in Thompson's opinion to the jury's attention. *See Swinnea*, 318 S.W.2d at 876 (the amount of damages, including lost profits, is a fact question for the jury). Virtuolotry and Boyd's objections to Thompson's testimony regarding lost profits, including their contentions that the methodology is skewed by the outlier year of 2013 and that the ultimate conclusion is illogical because the business did better after moving out, go to the credibility or the weight to be given to this evidence by the jury. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 40–41 (Tex. 2007) (concluding complaints about expert testimony went to the weight of such

testimony when the testimony did not present too great an analytical gap between the data and the opinion, or when the testimony did not amount to merely a recitation of the expert's credentials and a subjective opinion). We conclude Thompson's testimony was some evidence of lost damages. Accordingly, we overrule Virtuolotry and Boyd's ninth issue with respect to Westwood's lost profits damages.[12]

## IV. Conditions Precedent Notice of Default

In their sixth issue, Virtuolotry and Boyd assert Westwood failed to establish a condition precedent to its breach of lease claim.

A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied or that performance of the conditions was excused. *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e). Section 20.A. of the lease agreement, entitled "Default," provides:

> If Landlord fails to comply with this lease within 30 days after Tenant notifies Landlord in writing of Landlord's failure to comply, Landlord will be in default and Tenant may seek any remedy provided by law. If however, Landlord's non-compliance reasonably requires more than 30 days to cure, Landlord will not be in default if the cure is commenced within the 30-day period and is diligently pursued.

---

[12] We need not address Virtuolotry and Boyd's complaint regarding Westwood's evidence of rental-rate differences because Westwood's lost profit analysis provides it the greater recovery. TEX. R. APP. P. 41.1; *Parkway C. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (When possible, an appellate court should reform a trial court's judgment that allows a double recovery by awarding the plaintiff the higher of the two possible recoveries).

This provision required Westwood to provide Virtuolotry with written notice of an alleged breach of the lease and a thirty-day opportunity to cure before Westwood could pursue remedies for the breach. Westwood urges that if its letter dated November 13, 2015, demanding acknowledgement of the second renewal term, failed to comply with section 20.A. of the lease agreement, it was unnecessary for Westwood to provide notice of default because any such notice would have been futile, and the law does not require a party to perform a futile act. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594–95 (Tex. 2008). Westwood offered evidence establishing Virtuolotry had already repudiated the lease by refusing to renew it. *Mar–Len, Inc. v. Gorman–Rupp Co.*, 795 S.W.2d 880, 887 (Tex. App.—Beaumont 1990, writ denied) (appellant could not complain about other party's failure to perform condition precedent when appellant breached contract by repudiating it). Further notice of Westwood's position in connection with Virtuolotry's refusal to renew the lease for a second term would have been futile. Accordingly, we overrule Virtuolotry and Boyd's sixth issue because, if Westwood's November 13, 2015 letter failed to satisfy section 20.A of the lease agreement's requirements, further notice would have been futile.

In their seventh issue, Virtuolotry and Boyd contend the trial court erred in granting Westwood summary judgment and dismissing Virtuolotry's breach of contract claim against Westwood on the ground that the notice of default Virtuolotry provided was insufficient.

When a party presents multiple grounds for summary judgment and the judgment does not specify a particular ground on which the trial court rendered summary judgment, the appellant must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993). Similarly, where, as here, the trial court specifies multiple grounds upon which it is rendering summary judgment, the appellant must negate each ground on appeal. *See id.*; *Rider v. 21st Mort. Corp.*, 07-17-00389-CV, 2019 WL 2554575, at *3 (Tex. App.—Amarillo June 20, 2019, no pet.) (mem. op.). Stated conversely, where a trial court grants summary judgment based upon multiple grounds, that judgment should be affirmed if it is supportable on any ground. *See, e.g.*, *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

On appeal, Virtuolotry and Boyd do not challenge the no evidence grounds upon which the trial court granted summary judgment. Accordingly, we must accept the validity of the unchallenged ground and affirm the adverse ruling. *See id.* Because this unchallenged ground could independently support the trial court's summary judgment, any error in the ground challenged on appeal with respect to the breach of contract claim is harmless. *Morrison v. Profanchik*, No. 05-17-01281-CV, 2019 WL 3798182, at *3 (Tex. App.—Dallas Aug. 13, 2019, no pet.) (mem. op.). Virtuolotry and Boyd have therefore failed to establish any reversible error in

connection with the trial court's ruling on Virtuolotry's breach of contract claim. *See* TEX. R. APP. P. 44.1(a). We overrule Virtuolotry and Boyd's seventh issue.[13]

## V.   Attorney's Fees

In their final issue, Virtuolotry and Boyd challenge the trial court's award of attorney's fees to Westwood. They contend (1) Westwood failed to establish the fees owed to previous counsel were paid or still owing; (2) Westwood failed to segregate fees incurred for claims that were not submitted to the jury and tort claims, and (3) fees paid to experts should not have been awarded because they were not recoverable under the language of the lease allowing for the recovery of costs of litigation. In addition, Virtuolotry and Boyd assert that if this Court reverses the judgment on any of the other grounds raised on appeal, and if Westwood remains a prevailing party entitled to fees under the lease agreement, this Court should remand the issue of attorney's fees to the trial court. Westwood responds urging it was entitled to recover its attorney's fees pursuant to the lease agreement, that the three specific complaints Virtuolotry and Boyd raise in connection with the award of fees are meritless, and that a remand is not necessary even if the Court sustains some of

---

[13] In their discussion of their seventh issue, Virtuolotry and Boyd contend Westwood improperly used the court's ruling on the summary judgment to excuse it from proving its own performance under the lease to support its breach of contract claim and precluded them from asserting a prior breach defense at trial. At a conference prior to opening statements, the trial judge stated defendant cannot challenge that the renewal was not effective because the condition precedent of an agreement 90 days prior to the expiration of the lease but could challenge whether or not there was an agreement for the amount of rent that was going to be paid during the term of the renewal. Appellants do not raise an evidentiary sufficiency issue with respect to the performance element and have not sufficiently briefed these complaints and have not demonstrated how any ruling of the court with respect to same materially affected the trial or the judgment. Accordingly, appellants have waived this argument. TEX. R. APP. P. 38.1(i).

Virtuolotry and Boyd's issues because it will still be a prevailing party under the lease agreement entitled to recover its reasonable attorney's fees.

With respect to Virtuolotry and Boyd's first complaint about proof of payment or continued liability for outstanding bills, Virtuolotry and Boyd provided no authority in support of their contention that this is required. Moreover, other Texas appellate courts and courts applying Texas law have concluded no such prerequisite to the recovery of attorney's fees exists and we decline Virtuolotry and Boyd's invitation to conclude otherwise. *See AMX Enter., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 520–21 (Tex. App.—Fort Worth 2009, no pet.) (citing *Beckstrom v. Gimore*, 886 S.W.2d 845, 847 (Tex. App.—Eastland 1994, writ denied) (holding an attorney representing himself pro se may recover attorney's fees under Chapter 38 of the civil practice and remedies code); *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 683–84 (Tex. App.—San Antonio 1998, no writ) (holding state bar represented by private lawyers on a pro bono basis may recover reasonable attorney's fees); *Tuberquia v. Jamison & Harris*, No. A14–91–00055–CV, 1991 WL 260344, at *2 (Tex. App.—Houston [14th Dist.] Dec. 12, 1991, no writ) (not designated for publication) (holding law firm represented by one of its own attorneys in suit to collect legal fees entitled to recover attorney fees for the time and effort expended); *Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398, 400–01 (5th Cir. 1989) (applying Texas law and holding law firm that sued client to collect unpaid legal fees and that was represented by "an attorney who also

happened to be a salaried member of the firm" could recover attorney's fees under Chapter 38, just as a corporation may recover fees for in-house counsel)). Accordingly, we conclude Virtuolotry and Boyd's first complaint regarding the award of attorney's fees is without merit.

Virtuolotry and Boyd next argue that Westwood failed to segregate fees it incurred for claims that were not submitted to the jury and for tort claims. Westwood responds it was not required to segregate fees because (1) they are so intertwined and inseparable as to make segregation impossible, (2) the fees are recoverable for all of its claims under the terms of the lease agreement, and (3) the fees incurred defending against counterclaims and affirmative defenses are recoverable without segregation.

The need to segregate attorney's fees is a question of law, and the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312–13 (Tex. 2006). It is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated. *Id.* at 313–14. Legal services that would have been incurred on a recoverable claim are not disallowed simply because the services also further non-recoverable claims. *Hizar v. Heflin*, 672 S.W.3d 774, 802 (Tex. App.—Dallas 2023, pet. denied). Further, the segregation rule does not apply if contractual terms permitting attorney's fees are

broad enough to cover a claim that would otherwise require segregation. *See Rich v. Olah*, 274 S.W.3d 878, 888 (Tex. App.—Dallas 2008, no pet.).

Here, the parties' lease agreement provided, "[a]ny person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, reasonable attorney's fees, and all other costs of litigation from the nonprevailing party." This language is equivalent to the contractual language in *Trinh v. Lang Van Bui* that our sister court concluded was broad enough to encompass tort claims. No. 14-11-00442-CV, 2012 WL 5378112, at *12 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, pet. denied) (mem. op.). In addition, "fees incurred to overcome any and all affirmative defenses or to defend against a counterclaim that must be overcome to fully recover on the claim allowing fees do not require segregation." *Hizar*, 672 S.W.3d at 802 (internal quotation omitted). Moreover, where the appellant failed to point to instances of legal services for appellees' claims where segregation would be appropriate, he failed to carry his burden to show why appellees' evidence of unsegregated fees was insufficient. *See Cooper v. Cochran*, 288 S.W.3d 522, 536–37 (Tex. App.—Dallas 2009, no pet.).

Here, Westwood's attorney, James Pennington, testified that he reviewed the invoices with respect to the segregation issue. His firm prepared a summary of all the invoices and expenses, including those of prior counsel, and then he went through and segregated out fees he concluded were not solely related to claims for

which fees were recoverable in this case. In addition, Pennington explained in detail and claim by claim, which fees were recoverable, and which were not. More particularly, Pennington explained that the invoices from Strasburger & Price LLP totaled $54,510. He concluded all of the work performed by the firm related to work for which attorney's fees are recoverable. With respect to Kurt Elieson's representation of Westwood, Pennington determined ten of the hours billed were for work on claims for which attorney's fees are not recoverable. With respect to his firm's invoices, Pennington concluded $22,605 of the fees invoiced were for work related to claims for which attorney's fees are not recoverable. He then added another ten hours as a cushion to take into account other work which he may have missed or may have been unable to identify from the invoices that might have been for work on claims for which attorney's fees are not recoverable. In addition, Pennington testified about the overlap of work performed on various claims and explained that the main driving issue throughout the case had been whether there was a breach of the lease by Westwood or Virtuolotry and all the other claims were intertwined with that one particular claim. Pennington testified reasonable and necessary fees in the amount of $332,444.50 had been incurred through trial and that he anticipated a minimum of $20,000 of additional fees would be incurred in responding to post trial motions. Pennington also testified that, pursuant to the lease agreement, Westwood was seeking to recover expenses totaling $25,024.06 as costs of litigation. The record before us establishes, contrary to Virtuolotry and Boyd's

assertion, Westwood segregated attorney's fees where counsel deemed it appropriate and Virtuolotry and Boyd have not pointed to instances where segregation would have been appropriate but was not done.

Finally, appellants urge that expert fee expense is not recoverable under Texas law. *See* CIV. PRAC. & REM. § 31.007(b) (in suit for declaratory judgment, trial court has discretion to award a party its costs and reasonable attorney's fees as are equitable and just). Westwood responds asserting it sought to recover litigation costs under the lease and was not limited to court costs recoverable under section 31.007 of the civil practice and remedies code. Awarding costs is largely a matter of trial court discretion. *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 662 (Tex. App.—Dallas 2012, no pet.). We must uphold the trial court's decision unless it is clear the court's decision was arbitrary and unreasonable. *Id.*

Under paragraph 30 of the lease agreement, a prevailing party is entitled to recover prejudgment interest, reasonable attorney's fees, and all other costs of litigation from the nonprevailing party. Litigation costs are not necessarily synonymous with court costs. *Id.* We conclude the trial court did not abuse its discretion by impliedly finding the expert fees were allowed under the contractual provision allowing the prevailing party to recover costs of litigation. *See id.*

We conclude the attorney's fees and costs of litigation are recoverable but based upon our reversal of a portion of the damages awarded, we conclude it is appropriate to remand to the trial court for reconsideration of the amount of fees and

costs awarded using its own discretion in light of this opinion. *See Tex. Ear Nose & Throat Consultants v. Jones*, 470 S.W.3d 67, 93 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (trial court has discretion to fix amount of attorney's fees, but not to deny fees entirely, if language of parties' contract requires fees award); *see also* CIV. PRAC. & REM. § 37.009. We sustain appellants' tenth issue in part and remand to the trial court for reconsideration of the attorney's fees awarded to Westwood.

## CONCLUSION

We reverse the trial court's judgment awarding Westwood actual and exemplary damages against Boyd and render judgment that Westwood take nothing on its claims against Boyd. We reverse the portion of the trial court's judgment awarding Westwood rental-rate differential of $308,875 and render judgment that Westwood recover breach of contract damages in the amount of $463,356 and its security deposit of $11,500 from Virtuolotry. We remand for reconsideration of the amount of attorney's fees to award Westwood in light of this Court's resolution of this appeal. In all other respects, we affirm the trial court's judgment.


191055f.p05

/Nancy E. Kennedy/
NANCY KENNEDY
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

VIRTUOLOTRY, LLC AND
RICHARD BOYD, Appellants

No. 05-19-01055-CV     V.

WESTWOOD MOTORCARS, LLC,
Appellee

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-15-14833.
Opinion delivered by Justice
Kennedy. Justices Molberg and
Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding Westwood Motorcars, LLC actual and exemplary damages against Richard Boyd and **RENDER** judgment that Westwood Motorcars, LLC take nothing on its claims against Richard Boyd. We **REVERSE** the portion of the trial court's judgment awarding Westwood Motorcars, LLC rental-rate differential damages of $308,875 and **RENDER** judgment that Westwood Motorcars, LLC recover breach of contract damages in the amount of $463,356 and its security deposit of $11,500 from Virtuolotry, LLC. We **REMAND** this cause to the trial court for reconsideration of the amount of attorney's fees to award Westwood Motorcars, LLC in light of this Court's resolution of this appeal. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 17th day of September, 2024.